FILED
2007 Jul-31 PM 03:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

```
CHONDALE RUTLEDGE,           }
                             }
     Plaintiff,              }
                             }      CIVIL ACTION NO.
v.                           }      06-AR-2004-S
                             }
DAIRY FRESH OF ALABAMA, LLC, }
                             }
     Defendant.              }
```

**MEMORANDUM OPINION**

The court has for consideration the motion of Defendant, Dairy Fresh of Alabama, LLC ("Dairy Fresh"), for summary judgment in the above-entitled action brought by plaintiff, Chondale Rutledge ("Rutledge"), for gender discrimination in violation of the Equal Pay Act ("EPA") and Title VII of the Civil Rights Act of 1964. Also before the court is Dairy Fresh's motion to strike certain evidentiary submissions filed by Rutledge. For the following reasons, Dairy Fresh's motion for summary judgment will be granted in part and denied in part, and its motion to strike will be denied to the extent it is not moot.

*Facts*[1]

Dairy Fresh is a company that is in the business of selling and distributing wholesale dairy products, including milk and ice-cream products. Rutledge began working at Dairy Fresh's facility

---

[1] The parties dispute some of the facts. For purposes of this memorandum opinion, the court will recite disputed facts in the light most favorable to Rutledge, giving her the benefit of every doubt.

in Birmingham on January 20, 2005 as a driver on an ice-cream sales route. When Rutledge started working for Dairy Fresh, her salary was $600 per week.

During the school year, Rutledge, who is still employed by Dairy Fresh, delivers individually wrapped ice cream products to school cafeterias. She currently works the same school route that she did when she started with Dairy Fresh in January 2005, but the size of her route is "a little larger" now than it was when she started. During summers and other school-vacation periods, Rutledge works different routes and delivers individually wrapped and bulk ice-cream products to stores and nursing homes. Rutledge's job duties require her to assist in loading her truck with ice-cream products once or twice per week. She typically works from 6:30 a.m. until 2:30 p.m., but she occasionally works longer hours.

In December 2005, Rutledge learned that Dairy Fresh's milk-route drivers, all of whom are male, received a pay raise of $50 per week, from $600 to $650. Rutledge did not receive this raise. Shortly after she became aware of this, Rutledge approached Dairy Fresh's area manager, Ricky McDuffie, and requested that she receive the same raise. McDuffie told Rutledge that "it ain't going to happen because you are not a milk man." However, he immediately offered her a milk-route position and a raise to $650 per week. Rutledge did not accept McDuffie's offer because she

"didn't want to work milk," and because she "was hired in for ice cream, and that's where [she] wanted to stay, on ice cream."

Although Rutledge refused to explain in any detail during her deposition why she would not accept the milk-route position, several key differences between milk routes and ice-cream routes are worth noting.  First, milk-route drivers must load their delivery trucks every day, whereas ice-cream route drivers only load their trucks once or twice per week.  Second, milk crates are heavy, and working a milk route requires more heavy lifting.  Third, milk-route drivers work longer days than ice-cream drivers.  Whereas Rutledge typically works from 6:30 a.m. until 2:30 p.m., milk-route drivers typically work from 3:30 a.m. to 4:00 p.m.  Although no one at Dairy Fresh ever told her that she did not receive the raise because she is female, McDuffie once said that "this is not a place for women, this is not where women need to be working," and on another occasion said that "we don't hire any women.  We need to get rid of the ones we have now."

In addition to the milk-route drivers who received raises in December 2005, Willis Jason Byrd, a male ice-cream route driver, has earned $650 per week since Rutledge started working at Dairy Fresh.  Byrd began working for Dairy Fresh on May 9, 2002, at a salary of $500 per week.  When he later became an ice-cream driver at Dairy Fresh's Birmingham facility, he received a pay raise to $550 per week.  After two years, Byrd became the milk-route

supervisor, and his salary was increased from $550 per week to $650 per week. In mid-2004, after just one week as supervisor, Byrd voluntarily went back to working as an ice-cream driver, but his salary remained at $650 per week.

Rutledge filed an EEOC charge on March 6, 2006, alleging that Dairy Fresh was discriminating against her on the basis of her sex by paying her less than male employees. In August 2006, Dairy Fresh raised Rutledge's salary to $650 per week. Rutledge filed this action on October 10, 2006.

**I. Dairy Fresh's Motion for Summary Judgment**

*Summary Judgment Standard*

In considering a Rule 56 motion, the court must construe the evidence and make factual inferences in the light most favorable to the nonmoving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). The court may enter summary judgment only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The court does not "weigh the evidence and determine the truth of the matter," but solely "determine[s] whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 242-43 (1986) (citations omitted). This determination involves applying substantive law to the substantive facts construed in favor of the non-movant.

*Analysis*

**A.   Equal Pay Act**

In order to prevail on her EPA claim, Rutledge must make out a prima facie case by showing that Dairy Fresh paid a male employee a higher wage for equal work for a job which required "equal skill, effort, and responsibility, and which [is] performed under similar working conditions." *Irby v. Bittick*, 44 F.3d 949, 954 (11th Cir. 1995) (quoting *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974) and 29 U.S.C. § 206(d)(1)).  If Rutledge establishes a prima facie case, Dairy Fresh will not be liable only if it proves by a preponderance of the evidence that the pay difference was based on "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) . . . any other factor other than sex."  29 U.S. § 206(d)(1).  If Dairy Fresh satisfies this "heavy burden," Rutledge must rebut Dairy Fresh's explanation "by showing with affirmative evidence that it is pretextual or offered as a post-event justification for a gender-based differential." *Irby*, 44 F.3d at 954.  Rutledge contends that Dairy Fresh's milk-route drivers and Byrd held positions equivalent to that which she held, and that Dairy Fresh violated the EPA when it paid her less than these male employees.

Rutledge cannot establish her prima facie case with respect to Dairy Fresh's milk-route drivers because there is no dispute of

material fact that her job did not require equal skill, effort, and responsibility, and was not performed under similar working conditions, as the jobs performed by those male employees. Milk routes involve heavier lifting, more frequent truck loading, and longer hours than does Rutledge's ice-cream route. Rutledge expressly admitted during discovery that driving a milk route requires more work than driving an ice-cream route. Perhaps the most revealing piece of undisputed evidence — and that which is most devastating to Rutledge's claim vis-à-vis Dairy Fresh's milk-route drivers — is that McDuffie offered Rutledge a milk route and a commensurate pay increase when she complained that she was being underpaid, and Rutledge refused this offer because she "didn't want to work milk." Dairy Fresh was not obligated to pay Rutledge at the rate it was paying employees who were doing work Rutledge refused to do. The Equal Pay Act is not designed to address such a scenario.

With respect to Byrd as a potential comparator, the court finds that there is evidence sufficient for Rutledge to establish her prima facie case under the EPA. Rutledge and Byrd hold the exact same position title: salaried route sales driver. Except for the fact that Byrd delivers wholesale ice-cream products to retail stores while Rutledge primarily delivers single-serve products to schools, Rutledge's and Byrd's duties and responsibilities are the same and their job descriptions are identical. Rutledge and Byrd

work out of the same location under the same supervisors, drive the same type of truck, and deliver the same type of products. Their routes have close to the same number of stops. Dairy Fresh says that, compared to Rutledge's route, Byrd's route requires him to deliver a higher volume of product and brings in more sales revenue, but a jury could find that these facts are too insignificant to establish that Byrd's and Rutledge's jobs are not performed under "similar" working conditions, even if the conditions are not identical. *See Irby*, 44 F.3d 949 at 954. No two jobs are ever identical in all respects. Accordingly, the court cannot rule as a matter of law that Rutledge has failed to meet her prima facie case.

Dairy Fresh argues that even if Rutledge can establish a prima facie case under the EPA, it can state one or more of the affirmative defenses delineated in 29 U.S. § 206(d)(1). In proving that sex played no part in the wage differential, Dairy Fresh can rely on factors such as the unique characteristics of Byrd's job; Byrd's experience, training or ability; or special exigent circumstances connected with its business. *Steger v. General Electric Co.*, 318 F.3d 1066, 1078 (11th Cir. 2003) (citing *Irby*, 44 F.3d at 955). Dairy Fresh says that it has offered a valid explanation for the pay disparity in that compared to Rutledge, Byrd has been a Dairy Fresh employee for two-and-one-half years longer, has more experience working an ice-cream sales route,

delivers more product volume, and brings in more sales revenue.

Even if Rutledge does not dispute the facts on which Dairy Fresh bases its justification for the disparity in pay that once existed between her and Byrd, the court must be mindful of the burden of proof that shifts to Dairy Fresh once Rutledge establishes her prima facie case. Specifically, Dairy Fresh's burden is much more onerous than that which is "exceedingly light" in the Title VII context. *See Cooper v. Southern Co.*, 390 F.3d 695, 725 (11th Cir. 2004), *cert. denied*, 126 S.Ct. 478, 163 L.Ed.2d 363 (2005). While a Title VII defendant "need not persuade the court that its proffered reasons are legitimate; [its] burden is merely one of production, not proof," *id.*, a defendant facing an EPA claim has a "heavy" burden to prove by a preponderance of the evidence that "the factor of sex provided **no basis** for the wage differential." *Steger*, 318 F.3d at 1078 (citation omitted) (emphasis added). Here, in order to prevail on its motion for summary judgment on Rutledge's EPA claim, Dairy Fresh must persuade the court that no reasonable jury could possibly find **other** than that Rutledge's sex had **nothing** to do with the disparity in pay between her and Byrd. There can be no doubt that Dairy Fresh has identified ample evidence that could easily support a jury finding that sex played no role in the wage differential. Indeed, Byrd did not start earning $650 per week until he was first promoted to a supervisory position; and he worked at Dairy Fresh for two years

before his weekly salary increased from $550 to $600, while Rutledge's salary increased from $600 to $650 after only nineteen months. Moreover, Rutledge testified during her deposition that she personally did not think she was entitled to $650 per week when she first started working for Dairy Fresh in January 2005, and that she believed it was fair that she was paid $600 per week until the milk-route drivers earned their raise to $650 per week in December 2005. Nevertheless, even in light of this evidence, the court cannot make the determination that Dairy Fresh asks it to make at the Rule 56 stage. The burden-of-proof standard that Dairy Fresh now faces precludes it from doing so.

    The court recognizes the implications of this ruling — that once a plaintiff with an EPA claim satisfies the court that she can establish a prima facie case, whether the defendant has rebutted the presumption that it violated the EPA will virtually always be a jury question, even if the evidence strongly suggests that the plaintiff's sex played no role in the pay disparity. Although Dairy Fresh may not like it, that is the law as the court understands it. Dairy Fresh's motion for summary judgment on Rutledge's EPA claim will be denied insofar as it is based on the disparate pay between her and Byrd. To the extent that Rutledge intends to support her EPA claim by pointing to the disparity in pay between her and Dairy Fresh's milk-route drivers, Dairy Fresh's motion will be treated as if it were a motion in limine and will be

granted.

**B. Title VII Discrimination**

In order to state a *prima facie* case of Title VII discrimination in compensation, Rutledge must establish that (1) she belongs to a protected class; (2) she received low wages; (3) similarly situated comparators outside the protected class received higher compensation; and (4) she was qualified to receive the higher wage. *Miranda v. B&B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1528 (11th Cir. 1992). As a female, Rutledge belongs to a protected class. She received low wages relative to milk-route drivers and Byrd, and Dairy Fresh does not contend that she was not qualified to receive a higher wage. Dairy Fresh does contend, however, that Rutledge was not similarly situated to her purported comparators. For the same reasons discussed above as to Rutledge's EPA claim, the facts as construed in the light most favorable to Rutledge reveal that Rutledge cannot make her prima facie case as to Dairy Fresh's milk-route drivers, but that she can establish it as to Byrd. In spite of Dairy Fresh's argument to the contrary, Rutledge's Title VII claim is timely because she filed her EEOC charge within 180 days of learning that Byrd was being paid at the higher rate. *See Wakefield v. Cordis Corp.*, 211 Fed. Appx. 834, 836 (11th Cir. 2006) ("Title VII's statute of limitations period does not start to run until a plaintiff knew or reasonably should have known that [she] was discriminated against.") (quoting *Carter*

*v. West Publ'g Co.*, 225 F.3d 1258, 1265 (11th Cir. 2000)).

Once a plaintiff who has brought an action under Title VII establishes a prima facie case of discrimination, the defendant can rebut the presumption that it discriminated against her by offering a legitimate, nondiscriminatory reason for the disparity in pay. *Id.* at 1529. As discussed above, this burden is one of production, not proof, and is "exceedingly light." *See supra* p. 8 (citing *Cooper*, 390 F.3d at 725). Dairy Fresh says that it paid Rutledge less than it paid Byrd because compared to Rutledge, Byrd has been in its employ for two-and-one-half years longer, has more experience, delivers more product volume, and brings in more revenue. It has easily met its burden of providing a legitimate, nondiscriminatory reason for the disparity in pay.

In view of Dairy Fresh's articulated explanation, Rutledge, in order to avoid summary judgment, must now create a genuine issue of material fact as to whether the reasons Dairy Fresh has advanced are pretextual. *See Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1331 (11th Cir. 1998). She may do this by showing that the legitimate nondiscriminatory reasons should not be believed, or by showing that, in light of all of the evidence, discriminatory reasons more likely motivated the decision than Dairy Fresh's proffered reasons. *Id.* Rutledge first contends that Dairy Fresh failed to produce any admissible evidence as to the factors that were considered in setting the rates of pay for Mr. Byrd and/or Ms.

Rutledge, that it gave contrary testimony on factors to be considered in setting pay, and that the factual circumstances surrounding Rutledge's employment demonstrate that the factors articulated by Dairy Fresh were not used in setting her rate of pay at $50 a week less than Byrd. Even if the court assumes that Rutledge's assertions are completely accurate, no reasonable jury could find that they discredit Dairy Fresh's proffered explanation for the pay disparity, because Byrd's salary was initially set at a rate **lower** than Rutledge's was initially set. Byrd did not start earning $650 per week until he had attained **more** seniority than Rutledge had attained by the time Dairy Fresh started paying her $650 per week. Even if Dairy Fresh's pay scale was completely arbitrary, or even if Dairy Fresh had no idea how it was setting employee compensation, it is undisputed that Rutledge was paid at a rate equal to or greater than Byrd's rate at every equivalent point in their respective tenures with Dairy Fresh.

Rutledge next attempts to characterize the derogatory statements about women that McDuffie allegedly made as evidence of pretext. Rutledge says that McDuffie remarked that "we don't hire any women. We need to get rid of the ones we have now," and that "this is not where women need to be working . . . . This is not a place for women, they don't need to be working here." Rutledge is correct that gender-based derogatory remarks can, in some instances, establish that an employer's articulated reason for

12

paying disparate wages is pretextual. *Rojas v. Florida*, 285 F.3d 1339, 1342-43 (11th Cir. 2002). McDuffie's comments cannot discredit Dairy Fresh's explanation for paying Rutledge less than it paid Byrd, however, because Dairy Fresh **did** hire Rutledge, it did **not** "get rid of" her, and Rutledge **is**, to this day, still a Dairy Fresh employee. If McDuffie had made a comment such as "women who work here should be paid less than men," that remark could possibly function as evidence of pretext under the facts of this case. The remarks that McDuffie did allegedly utter, however, while derogatory toward women, do not implicate the disparate-pay issue, and are belied by the very fact that Rutledge was hired by and continues to work for Dairy Fresh. Moreover, even if McDuffie's comments did bear some relation to the pay issue, they were too infrequent and non-pervasive to establish pretext. *See id.* ("Remarks such as this one — isolated and unrelated to the challenged employment decision — are not direct evidence of discrimination.") Since Rutledge has no evidence that Dairy Fresh's proffered explanation for paying Rutledge less than Byrd is a pretext for unlawful discrimination, Dairy Fresh's motion for summary judgment on Rutledge's Title VII claim will be granted.

**II. Dairy Fresh's Motion to Strike**

After Rutledge filed her opposition to its motion for summary judgment, Dairy Fresh filed a motion to strike Rutledge's affidavit and the deposition of Jon Foshee, who is a supervisor at Dairy

13

Fresh. As to Rutledge's affidavit, Dairy Fresh specifically moves for the court to strike paragraphs 4 and 2(b). Paragraph 4 states:

> In paragraph eleven of the Defendant's Summary Judgment Brief, it states that I am not contending that I should have been paid $650 per week when I began working for Dairy Fresh in January 2005. I dispute this statement. In my lawsuit I am contending that I should have been paid the same as similarly situated male employees. I did not know that Jason Byrd was making $650 a week in January 2005. I learned in December 2005 that the male drivers were getting a raise of $50 a week to raise their pay to $650. I did not feel that it was fair that I was only making $600 a week, and the men were making $650 a week when we all did the same job. In December 2005, I learned that I was being paid less than the male drivers. At this time, I began hearing rumors that Mr. Byrd was making $650 a week, but did not learn that this was his rate of pay with any certainty until seeing evidence in this action. I should have been paid $650 a week at the time that similarly situated male drivers were making that rate.

In paragraph 2(b) of her affidavit, Rutledge states:

> Male route drivers with whom I have worked have shown me their paychecks and told me how much they make. Despite the fact that they have all started with the company at different times and have different delivery routes (which would mean that they would have different revenues brought into the company), they are all paid at the same rate of pay. The following route drivers have told me that they make $650 a week, and have shown me their pay stubs which confirm they are paid $650 a week: Gerald Cammack, Marcel Dixon, Charles Jones, Gerrit Jones, Alan Meeks, and Gabriel Taggert. Based on these facts, I have observed that all the male drivers are paid the same rate of pay, regardless of their seniority with the company, sales revenue, route size and/or hours worked. I saw these pay stubbs [sic] and talked to these drivers in 2006 prior to me receiving a raise to $650 a week.

Dairy Fresh's motion to strike will be denied with respect to paragraph 4 of Rutledge's affidavit. Although it is true that "a district court may find an affidavit which contradicts testimony on

deposition a sham when the party merely contradicts its prior testimony," *Van T. Junkins & Assocs. v. U.S. Indus.*, 736 F.2d 656, 656 (11th Cir. 1984), the court is not satisfied that any of Rutledge's deposition testimony necessarily establishes that she knew for a fact, or that she should have known, that Byrd was making $650 week prior to December 2005. Indeed, Rutledge explicitly testified that she "didn't know how much [Byrd] was earning" when she filed her EEOC charge against Dairy Fresh in February 2006. The court also will not find that Rutledge is estopped from asserting her EPA claim with Byrd as a comparator because she testified during her deposition that she does not contend that she should have been earning $650 per week when she first started with Dairy Fresh in January 2005. As Rutledge correctly points out, for the court to find that she is estopped from doing so would be akin to holding her responsible for being an expert on the intricacies of the Equal Pay Act. Rutledge is not a lawyer, and even if she were, the court would still have reservations about striking this portion of her affidavit in light of her deposition testimony.

Dairy Fresh's motion to strike will also be denied as to paragraph 2(b) of Rutledge's affidavit, because that portion of Dairy Fresh's motion is moot in light of the court's ruling that milk-route drivers are not appropriate comparators for either of Rutledge's claims. Paragraph 2(b) of Rutledge's affidavit is

directed exclusively at the alleged pay raises of milk-route drivers.

Dairy Fresh next asks the court to strike the deposition testimony of Foshee because Rutledge based some of her deposition questions on a document that Dairy Fresh requested during discovery, but that Rutledge failed to produce until after Foshee's deposition was taken.  The specific testimony that Dairy Fresh wishes to have stricken deals with McDuffie's alleged statements evincing bias against and/or animus toward against women.  As explained above, the court would grant Dairy Fresh's motion for summary judgment on Rutledge's Title VII claim whether or not McDuffie did, in fact, make these statements.  And even if these statements were not made, the court would deny Dairy Fresh's summary-judgment motion as to Rutledge's EPA claim.  Dairy Fresh's motion to strike therefore will be deemed to be moot insofar as it is aimed at Foshee's deposition testimony.  Even if this part of Dairy Fresh's motion to strike were not moot, the court would be disinclined to strike Foshee's testimony, as it would seem to be more appropriate to strike the document that Rutledge improperly withheld during discovery than answers Foshee provided during his deposition.

*Conclusion*

In accordance with the foregoing, Dairy Fresh's motion for summary judgment will granted in part and denied in part, and its

motion to strike will be denied and deemed moot, by separate order.

DONE this 31st day of July, 2007.

```
                              _____
                              WILLIAM M. ACKER, JR.
                              UNITED STATES DISTRICT JUDGE
```